**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IRON WORKERS LOCAL NO. 25 PENSION FUND, Derivatively on Behalf of MONOLITHIC POWER SYSTEMS, INC.,<br><br>Plaintiff,<br>v.<br>KAREN A. SMITH BOGART, et al.,<br>Defendants,<br>- and -<br>MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br>Nominal Defendant. | Case No.: 11-4604 PSG<br><br>**ORDER GRANTING DEFENDANT MONOLITHIC POWER SYSTEMS, INC.'S MOTION TO DISMISS; ORDER GRANTING DEFENDANT FIRST NIAGARA FINANCIAL GROUP, INC.'S MOTION TO DISMISS**<br><br>**(Re: Docket Nos. 21, 24)** |

## I. INTRODUCTION

Plaintiff Iron Workers Local No. 25 Pension Fund ("the Fund") brings this derivative suit on behalf of Monolithic Power Systems, Inc. ("MPS"). The Fund names as defendants members of the MPS board of executive officers and current or former senior officers of MPS ("Defendants"), and alleges that the board breached its fiduciary duty of loyalty. The Fund further seeks damages from Defendant First Niagara Financial Group, Inc. ("First Niagara"), alleging that First Niagara aided and abetted the breach of fiduciary duty by its advice on the subject of executive

1
Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

compensation. MPS moves to dismiss the Fund's complaint on the ground that the Fund failed to satisfy the pre-suit demand requirement. MPS further moves to dismiss the Fund's complaint for failure to state a claim upon which relief may be granted under the heightened standard for derivative suits as set forth by Federal Rule of Civil Procedure 23.1. First Niagara similarly moves to dismiss the complaint for failure to adequately plead demand futility and for failure to state a claim for which relief may be granted. The Fund opposes the motions. The parties appeared for hearing.  Having reviewed the papers and considered the arguments of counsel, and for the reasons explained below, the court GRANTS both motions.

## II.   BACKGROUND

For purposes of this motion, the factual allegations in the complaint are taken as true. The Fund is a shareholder of MPS, a fabless semiconductor company that designs and markets advanced analog and mixed-signal semiconductors.[1] The Fund brought this suit on behalf of MPS against all seven members currently on the MPS board,[2] as well as one former director[3] and current or former senior officers of MPS.[4] In 2010, MPS shareholders suffered a negative 31.17% annual shareholder return,[5] while shareholders of its peer group of companies received, on average, a positive annual return of 24.99%.[6]  In 2010, despite these alleged poor shareholder returns, the MPS Board, with the assistance of First Niagara, dramatically increased compensation for MPS's

---

[1] *See* Docket No. 1 at ¶¶ 10-11.

[2] *See id.* at ¶¶ 12-16, 18-19 (naming Karen A. Smith Bogart, Herbert Chang, Victor K. Lee, Douglas McBurnie, James C. Moyer ("Moyer"), Jeff Zhou, and Michael R. Hsing ("Hsing") as defendants because they breached their fiduciary duty to MPS).

[3] *See id.* at ¶ 17 (naming Umesh Padval as a defendant for breach of fiduciary duty).

[4] *See id.* at ¶¶ 20-23 (naming Deming Xiao ("Xiao"), Maurice Sciammas ("Sciammas"), Paul Ueunten ("Ueunten"), and C. Richard Neely, Jr. ("Neely"), as defendants based on the theory of unjust enrichment because of their increased compensation packages).

[5] *See id.* at ¶ 3.

[6] *See id* at ¶ 33.

2

Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

top executives.[7] For example, Hsing received $5,625,500 in total 2010 compensation, a significant increase over his 2009 compensation of $1,000,000.[8] Other top executives at MPS enjoyed also significant pay raises.[9]

This substantial increase in executive compensation took place against a backdrop of executive compensation policies stated in the MPS 2011 Proxy Statement dated April 29, 2011 ("2011 Proxy Statement"):

> The primary goal of our named executive officer compensation program is the same as our goal for operating the Company- to create long-term value for our stockholders. To achieve this goal, we have designed and implemented our compensation programs for our named executives to motivate and reward them for sustained financial and operating performance and leadership excellence, to align their interests with those of our stockholders and to encourage them to remain with the Company for long and productive careers.[10]

On June 16, 2011 the MPS Board unanimously recommended shareholder approval of the executive compensation package for 2010.[11]

In an advisory vote, 64% of voting shareholders voted against the increase in executive compensation.[12] The MPS shareholder base consists primarily of sophisticated institutional investors who possess experience, expertise and resources to assess whether, in their own independent business judgment, executive compensation is in their best interests as shareholder owners.[13]

---

[7] *See id.* at ¶ 35.

[8] *See id.*

[9] *See id.* (alleging an increase in compensation for Xiao from $622,615 to $2,058,471; an increase in compensation for Sciammas from $582,615 to $1,443,700; an increase in compensation for Ueunten from $561,662 to $1,158,900; and an increase in compensation for Neely from $525,000 to $1,041,900.).

[10] *See id.* at ¶ 30.

[11] *See id.* at ¶ 36.

[12] *See id.* at ¶ 2.

[13] *See id.* at ¶ 38.

3
Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

The Fund did not present a demand to the MPS Board that it initiate this suit before filing this suit.[14]

### III. LEGAL STANDARDS

**A. Motion to Dismiss Pursuant to Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[15] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[16] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[18] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[19] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[20]

---

[14] *See id.* at ¶ 45.

[15] Fed. R. Civ. P. 8(a)(2).

[16] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[17] *Ashcroft v. Iqbal,* __ U.S. _, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).

[18] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

[19] *See Metzler*, 540 F.3d at 1061.

[20] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

4
Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[21]

### B. Motion to Dismiss Pursuant to Rule 23.1

Federal Rule of Civil Procedure 23.1(a) imposes a heightened pleading standard when "one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."[22] Under this standard, the complaint must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."[23] This requirement operates as a threshold to insure that plaintiffs exhaust intracorporate remedies so that courts may properly focus on the motivations fueling a board's decision rather than its particular merits. "[D]irectors are entitled to a *presumption* that they were faithful to their fiduciary duties [and] the burden is upon the plaintiff in a derivative action to overcome that presumption."[24]

When no demand is made, futility of demand must be pleaded.[25] Under the seminal *Aronson* test,[26] there are two ways to show demand futility. The *Aronson* first asks whether the

---

[21] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003).

[22] Fed. R. Civ. P. 23.1(a).

[23] Fed. R. Civ. P. 23.1(b)(3). *See also Potter v. Hughes,* 546 F.3d 1051, 1056 (9th Cir. 2008) (explaining that a plaintiff is able to bring a shareholder derivative lawsuit if: (1) the plaintiff owned shares in the corporation at the time of the disputed transaction; and (2) the plaintiff alleged with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors).

[24] *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004).

[25] *See In re Goldman Sachs Group, Inc. S'holder Litig.*, Case No. 5215-VCG, 2011 Del. Ch. LEXIS 151, at *19 (Del. Ch. Oct. 12, 2011) (internal citations omitted) (holding that if a shareholder does not "first demand that the directors pursue the alleged cause of action, he must establish that demand is excused by satisfying stringent pleading requirements of factual

5

Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

shareholder has pleaded with "with particularity facts that establish that demand would be futile because the directors are not independent or disinterested."[27] The second prong of the test asks whether there is a reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of business judgment."[28] These prongs are in the disjunctive, and therefore, "if either prong is satisfied, demand is excused."[29]

## IV.   DISCUSSION

The court must begin by analyzing the two prongs of the *Aronson* test to determine if demand was excusable and if the Fund met the heightened pleading standard set forth in Rule 23.1(b)(3).

### A. First Prong of *Aronson*

As explained above, the first prong of the *Aronson* test examines whether the board members were sufficiently disinterested or independent.[30] MPS and First Niagara contends that at best only two of the seven board members, Hsing and Moyer,[31] personally benefited from the

---

particularity by setting forth particularized factual statements that are essential to the claim in order to demonstrate that making demand would be futile."). Demand futility is determined under the law of the company's incorporating state which, in the present case, is Delaware. *See also In re Sargent Tech., In. Derivative Litig.,* 278 F.Supp.2d 1079, 1090 (N.D. Cal. 2003).

[26] *See Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). First Niagara disputes that *Aronson* applies to the claims it faces, arguing that such claims challenging non-board action are properly analyzed under the similar test in *Rales v. Blasband,* 634 A.2d 927 (Del. 1993). *See In re Bidz.com, Inc. Derivative Litig.,* 773 F.Supp.2d 844, 851 (C.D. Cal. 2011). Because the court concludes that the Fund fails to allege demand futility under either case's standard, the court need not resolve this issue.

[27] *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005) (internal citations omitted).

[28] *Id.* (internal citations omitted).

[29] *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000).

[30] *See Aronson*, A.2d at 814.

[31] The complaint does not allege that Moyer received an increase in compensation. Rather the complaint alleges that Moyer is on the MPS Board and is also an employee of MPS leaving the

6
Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

challenged compensation decision.[32] MPS therefore argues that the Fund did not adequately plead that a majority of the board was motivated by personal interest or lacked independence with respect to the challenged action. The Fund responds that all of the board members face a substantial likelihood of liability, and are therefore subject to a disqualifying interest.[33]

The Fund may show that a director is interested "by demonstrating a potential personal benefit or detriment to the director as a result of the decision."[34] For example, "a director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders."[35] In rare cases, "a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exist," which can show that the board members were not independent or disinterested.[36] "However, the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors."[37] It is not sufficient to state that a demand was futile simply because the board approved the underlying transaction.[38]

---

court to infer that it is plausible Moyer could be motivated by personal interest. *See* Docket No. 1 at ¶ 16.

[32] *See* Docket No. 24 at 6:7-14.

[33] *See* Docket No. 35 at 9:20-10:8.

[34] *Beam*, 845 A.2d at 1049.

[35] *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). *See also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d at 821 ("Disinterested means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally").

[36] *Aronson*, 473 A.2d at 815.

[37] *Id.*

[38] *See Brehm*, 746 A.2d at 256 n.34.

7
Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

The court finds that the Fund has not met its burden of proving that a majority of the directors are interested or not independent. The Fund has alleged that only two of seven directors received any personal benefit from the challenged transaction. The Fund has not pleaded any facts to show that either of these directors dominated the MPS Board or that the MPS Board was so under their influence that the majority of its members were not independent. Under these circumstances, the Fund's pre-suit demand requirement under the first prong of *Aronson* is not met.

### B. Second Prong of *Aronson*

Under the second prong of *Aronson*, the Fund must raise a reasonable doubt that the transaction is entitled to the protection of the business judgment rule.[39] The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company."[40] In the context of a pre-suit demand, board members are presumed to have been faithful in their fiduciary duties, and "the burden is upon the plaintiff in a derivative action to overcome that presumption."[41] In order to rebut this presumption, the plaintiff "must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision."[42]

---

[39] *See In re Walt Disney Co. Derivative Litig.,* 825 A.2d 275, 286 (Del. Ch. 2003).

[40] *Aronson*, 437 A.2d at 812.

[41] *Beam*, 845 A.2d at 1049.

[42] *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d at 824 (quoting *In re Walt Disney Co.*, 825 A.2d at 286). *See also Cede*, 634 A.2d at 361 (quoting Sinclair Oil Corp., 280 A.2d 717, 720 (Del. 1971)) ("a decision made by a loyal and informed board will not be overturned by the courts unless it 'cannot be attributed to any rational business purpose.'").

8

Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

The Fund does not even claim that the MPS Board was not adequately informed when it made its decision to increase executive compensation.[43] Instead, the Fund primarily relies upon the negative "say-on-pay" vote to cast doubt on the honesty and good faith of MPS's board in making its decision to increase executive compensation. The Fund argues that the negative "say-on-pay" shareholder vote is evidence showing that directors failed to act in the shareholders' best interests and rebuts the presumption that the MPS Board's decision regarding compensation is entitled to business judgment deference.[44]

The Fund's allegations here regarding the challenged compensation decision are not sufficient to overcome the presumption that the MPS Board reasonably exercised its business judgment.[45] The fact that the Fund's interpretation of the "pay-for-performance" policy does not match the MPS Board's executive decision is not the equivalent of an allegation that the MPS Board intentionally misled shareholders. Additionally, the 64% negative vote by shareholders does not, on its own, rebut the business judgment presumption.[46]

---

[43] The complainant actually shows that the MPS Board took adequate steps to become informed by hiring First Niagara to provide executive compensation advisory services. *See* Docket No. 1 at ¶ 24.

[44] The Fund primarily relies upon the analysis of Ohio law in *NECA-IBEW Pension Fund on behalf of Cincinnati Bell, Inc. v. Cox*, 2011 U.S. Dist. LEXIS 106161, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011) ("*Cincinnati Bell*"). However, a recent Northern District of California decision applying Delaware law, *Laborers' Local v. Intersil*, Case No. 11-4093 EJD, 2012 U.S. Dist. LEXIS 30289, at *25-27 (N.D. Cal. Mar. 7, 2012), declined to follow the *Cincinnati Bell* analysis. After a thorough analysis of the legislative history of the Dodd-Frank Act, and cases decided prior to the act, the court concluded that a shareholder vote alone is not enough to rebut the presumption of the business judgment rule. *Accord Plumbers Local No. 137 Pension Fund v. Davis*, Case No. 03:11-633-AC, 2012 U.S. Dist. LEXIS 5053 (D. Or. Jan. 11, 2012).

[45] *See Brehm,* 746 A.2d at 263.

[46] Judge Davila provides a thorough analysis of why this is so, and the court adopts that same analysis here. *See Intersil*, 2012 U.S. Dist. LEXIS 30289 at *25-27.

9
Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS

Because the Fund failed to satisfy either prong of the *Aronson* test for demand futility, the complaint must be dismissed.[47]

### IV.   CONCLUSION

MPS and First Niagara's motions to dismiss the complaint are GRANTED.  The court further GRANTS the Fund leave to amend its complaint to adequately state a claim. Any amended complaint shall be filed no later than July 2, 2012.

**IT IS SO ORDERED.**

Dated:    6/13/2012                             _____
                                                                 PAUL S. GREWAL
                                                                 United States Magistrate Judge

---

[47] As the court finds that the Fund did not satisfy the demand requirement, the court will not address Defendants' remaining arguments.

10
Case No.: 11-4604 PSG
ORDER GRANTING MOTIONS TO DISMISS